IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE METROHEALTH SYSTEM, DBA METROHEALTH MEDICAL CENTER, | CASE NO. 1:09 CV 2645 |
| Plaintiff, | MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT |
| -vs- | |
| ERAMED, LLC, Defendant. | |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff, The Board of Trustees of the MetroHealth System, dba MetroHealth Medical Center (hereinafter "MetroHealth") brings this suit against EraMED LLC (hereinafter "EraMED") claiming breach of contract and specific performance, and seeking declaratory judgment, upon the basis of an Aircraft Management Agreement ("Agreement") between the parties. (Doc. 1). The Agreement governs MetroHealth's claims against EraMED and contains an arbitration clause.

Two weeks after MetroHealth filed its complaint, EraMED motioned the Court to

dismiss or stay proceedings and compel arbitration. (Doc. 4). MetroHealth filed a brief in opposition (Doc. 8) to which EraMED replied. (Doc. 9). The matter is now ripe for consideration.

Construing all allegations as true and drawing reasonable inferences in favor of MetroHealth, the Court finds EraMED's motion well-taken. For the reasons discussed below, the Court will grant EraMED's motion to compel arbitration. Further, as all of MetroHealth's claims are subject to arbitration, the Court will grant EraMED's motion to dismiss the complaint.

**BACKGROUND**

This dispute involves the terms of a contract to operate and maintain emergency medical helicopter transport. MetroHealth owns and/or leases these helicopters, which service its Level 1 Trauma Center, and contracts with a third party to ensure the aircraft are operated in compliance with federal law. EraMED assumed the contractual obligations for the operation and maintenance of the aircraft from 1 January 2007 through 31 July 2009. Effective 1 August 2007, EraMED and MetroHealth entered into an Aircraft Management Agreement (the "Agreement"), pursuant to which the Defendant agreed to maintain and pilot four Sikorsky S76A helicopters in compliance with Federal Aviation Administration ("FAA") regulations. In return, EraMED received fees and costs of approximately $16,730,000 between 1 August 2007 and 31 July 2009. (Complaint ¶¶ 6-10).

In June 2009, after both parties had ceased negotiating for a renewal of the

Agreement, and in anticipation of the Betterment/Detriment accounting[1] for the aircraft under its care, EraMED filed a lien against one of the aircraft, pursuant to O.R.C. 1311.71, *et seq.*, with the FAA in the amount of $63,201.93. Two days later, EraMED filed a second lien against a second aircraft in the amount of $112,372.58. Three months later, EraMED filed a third lien against a third aircraft in the amount of $140,705.84. MetroHealth contends that it owes EraMED no monies on the liens and that EraMED's conduct constitutes waiver of the Agreement's arbitration clause. (Complaint ¶¶ 12-17).

MetroHealth maintains that EraMED has failed to comply with the Agreement's record-keeping requirements, applicable both during the exercise and upon expiration of the Agreement. MetroHealth alleges that EraMED failed to provide the Plaintiff, or its new third-party contractor, with the extensive records necessary for operation of three of the four aircraft, including maintenance records, log books and records of flight hours, and other records required by the FAA. (Complaint ¶¶ 18-24).

MetroHealth asks the Court to find EraMED in breach of contract for its failure to maintain and provide the records required by the Agreement and the FAA for operation of the aircraft, the absence of which renders the aircraft "worthless resulting in lost value to the aircraft in the millions of dollars." (Complaint ¶ 31). Further, MetroHealth seeks a

[1]"Betterment/Detriment" accounting, as provided in the Agreement, allows the parties at the expiration of the Agreement to assess the specific aircraft "the airframe and component status at the outset of the contract for all time/cycle controlled checks on the airframe or components." The parties agree upon an hourly or per cycle fee for each item. (Complaint ¶ 12). The parties then reconcile this figure with the ending status of the airframe and components at the expiration of the Agreement. The reconciliation involves a cash adjustment to the party realizing the cost.

declaratory judgment from the Court that it does not owe the amounts claimed by EraMED in the liens filed against three of the aircraft. (Complaint ¶¶ 35-40). Finally, MetroHealth sues for specific performance from EraMED, requesting the Defendant be required to comply with the record-keeping terms of the Agreement or pay MetroHealth for the lost value to the aircraft caused by the Defendant's alleged failure to create and maintain the necessary records.

**LAW AND ANALYSIS**

The Supreme Court has long recognized that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Construc. Corp., 460 U.S. 1, 24-25 (1983).

In addition, the Supreme Court has held that the Federal Arbitration Act preempts state laws and policies regarding arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10-11 (1984). The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA manifests a strong and liberal federal policy in favor of arbitration of disputes. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985); see also Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 911 (6th Cir. 2000).

The question of whether arbitration is required is a question of law. See Litton Financial Printing Division v. NLRB, 501 U.S. 190, 208 (1991). In answering this question, the Court must determine whether there is an agreement to arbitrate. Mitsubishi Motors Corp. v. Slower Chrysler-Plymouth, 473 U.S. at 626. The FAA mandates the compulsory arbitration of a dispute covered by a valid arbitration agreement. 9 U.S.C. § 2.

The issues before the Court in this matter, then, are whether MetroHealth agreed to arbitrate certain disputes with EraMED, and whether EraMED waived its arbitration rights. See Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 933 (6th Cir. 1998). The Court begins its analysis with a review of the Federal Arbitration Act, Title 9 U.S.C. § 1, *et seq.*, and its purpose.

The FAA embodies "the strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). The FAA was enacted to provide for enforcement of privately entered agreements to arbitrate. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 52 (1995) (noting that the central purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms"); see also Ferro Corp., 142 F.3d at 932 (noting that the FAA was necessary in order "to overcome judicial reluctance to allow arbitration" as

a means of deciding certain cases).

Section 2 of the FAA provides that written agreements to arbitrate in a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (West 2000). The Supreme Court has interpreted this phrase to mean that only claims for fraudulent inducement of the arbitration clause itself may be heard by a court. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967); see also 9 U.S.C. § 4.

Section 3 of the FAA provides for a stay of proceedings in district courts when an issue is determined to be arbitrable. 9 U.S.C. § 3. Courts may dismiss cases subject to reinstatement where there "is nothing left for the district court to do but execute judgment." Arnold v. Arnold Corp.-Printed Communications for Business, 920 F.2d 1269, 1276 (6th Cir. 1990).

Section 4 gives district courts authority to compel arbitration when a party neglects or refuses to comply with an arbitration agreement. 9 U.S.C. § 4.

The Sixth Circuit considers four factors when determining whether to grant motions to dismiss or stay the proceedings and compel arbitration:

> (1) The Court must determine whether the parties agreed to arbitrate;
>
> (2) The Court must determine the scope of that agreement;
>
> (3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and
>
> (4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir.2000). In applying these factors, "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." Id.

In the instant dispute, the parties' Aircraft Management Agreement ("Agreement") requires the arbitration of disputes, broadly conceived. The Agreement contains the following arbitration provision:

> With the exception of any actions for temporary or permanent injunctive relief, any dispute under or in connection with this Agreement shall be submitted for arbitration in Cleveland, Ohio, pursuant to the rules of the American Arbitration Association for commercial arbitrations, before a single arbitrator selected in accordance with the rules of the American Arbitration Association. Costs of the arbitration , including arbitrator's fees, but excluding each party's own costs, including their own attorneys' fees, shall be borne equally by EraMED and MetroHealth.

Agreement ¶5.11

In reviewing the factors enunciated in Stout, the Court finds the contract reflects the parties intent to arbitrate disputes arising from the Agreement. Further, the arbitration clause clearly applies to any but the most narrow controversy relating to MetroHealth's contractual arrangements with EraMED. The clause excludes only requests for temporary restraining orders or permanent injunctions, neither of which come into play in this dispute for declaratory judgment, specific performance, and breach of contract. Rather, the language of the clause "indicates that the parties' basic intent was to provide a single arbitral forum to resolve all disputes" arising under the Agreement. Arnold v. Arnold Corp.-Printed Communications for Business, 920 F.2d at 1282. Unless a matter is expressly exempted, it should be construed as being within the scope of the arbitration agreement. United Steelworkers of America v. Mead Corp.,

21 F.3d 128, 131 (6th Cir. 1994).

While there is no question that MetroHealth is bound by the arbitration agreement, the Plaintiff raises two defenses to the application of the Agreement's arbitration clause: (1) MetroHealth disputes the scope of the arbitration clause as it applies to declaratory judgment actions; and (2) MetroHealth alleges EraMED has waived any arbitration rights by filing statutory liens against three aircraft.

MetroHealth maintains that its action for a declaratory judgment does not fall within the ambit of the Agreement's arbitration clause. Here, the Plaintiff's position misses the mark. MetroHealth seeks a declaratory judgment from the Court that the statutory liens filed by EraMED on three MetroHealth aircraft are invalid. Those liens, as enunciated by MetroHealth in its Complaint, were filed by EraMED in anticipation of alleged payments due from MetroHealth at the expiration of the Agreement, through the "Betterment/Detriment" reconciliation process as determined in the Agreement. Because MetroHealth's declaratory judgment claim arises under the terms of the Agreement, the claim is within the scope of the arbitration clause.

MetroHealth, further, maintains that EraMED's lien filings on MetroHealth's aircraft evinces waiver of the Agreement's arbitration clause. An assertion of waiver requires an extended analysis because the federal policy favoring arbitration is not absolute.

It is well settled that a party can waive its contractual right to arbitration like any other contractual provision. See American Locomotive Co. v. Gyro Process Co., 185 F.2d 316, 318 (6th Cir. 1950) (holding "the contract right of arbitration [can] be waived"); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994)

(recognizing that a contractual right to arbitration can be waived like any other contract provision); Kramer v. Hammond, 943 F.2d 176, 179 (2nd Cir.1991) (finding waiver of right to arbitration where party engages in protracted litigation and prejudice results to the opposing party); Cornell & Co. v. Barber & Ross Co., 360 F.2d 512 (D.C. Cir. 1966) (finding waiver where defendant filed motion for transfer of venue, filed counterclaim, took depositions, and procured the production of documents).

Various jurisdictions have adopted different tests to determine waiver of arbitration rights. A number of circuits regard prejudice as the pivotal factor in determining waiver. See Rush v. Oppenheimer, 779 F.2d 885, 887 (2nd Cir. 1985) (holding waiver of right to compel arbitration may be found only where prejudice to the other party is demonstrated.); Gavlik Construction Co. v. H.F. Campbell Co., 526 F.2d 777, 782 (3rd Cir. 1975) (holding that the presence or absence of prejudice to the opposing party, not inconsistency, is determinative of the issue of waiver). See also Miller Brewing Co. v. Fort Worth Distrib. Co., Inc., 781 F.2d 494, 497 (5th Cir. 1986) (finding waiver of arbitration right when "the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.")

Sixth Circuit cases interpreting federal law on the waiver of a right to arbitration do not expressly address the issue of prejudice. In American Locomotive v. Gyro Process Co., 185 F.2d 316 (6th Cir.1950), the Sixth Circuit found American Locomotive had waived its right to arbitrate under the FAA by proceeding with the litigation process without indicating any intention to enforce its rights. The court noted that at the time of the filing of the original complaint, or within a reasonable time thereafter, American Locomotive could have and should have made the decision to either insist upon its

contractual right to arbitration or to prepare for trial by jury. See American Locomotive Co., 185 F.2d at 320. In finding waiver, the Sixth Circuit utilized the generally recognized definition of "waiver" as "an intentional relinquishment of [a] known right" and rejected American Locomotive's argument that consideration was necessary to support a waiver. Id. at 320. Instead, the Sixth Circuit focused on the inconsistency between American Locomotive's conduct in continuing to prepare for a jury trial and an intent to arbitrate. See also Germany v. River Terminal Ry. Co., 477 F.2d 546, 547 (6th Cir. 1973) (recognizing that the right to stay proceedings and compel arbitration may be waived by the actions of a party which is completely inconsistent with any reliance thereon, without discussing prejudice as a factor).

Other district courts within the Sixth Circuit have recognized prejudice to be a significant factor in determining waiver of an arbitration right but not an express requirement for finding a waiver. See In re H & M Charters, Inc. v. Reed, 757 F.Supp. 859, 865 (S.D. Ohio 1991) ("Prejudice and delay are significant factors the court must consider in applying the default provisions of section 3 of the Federal Arbitration Act."); J. Wise Smith and Assoc., Inc. v. Nationwide Mut. Ins. Co., 925 F.Supp. 528, 531 (W.D. Tenn.1995) ("Although Illinois law does not require the party seeking to prove waiver to show prejudice," the Sixth Circuit noted that "prejudice results when one party invokes the litigation process and then seeks arbitration, thereby causing the other party to incur duplicate expenses"). In light of the Sixth Circuit's emphasis on inconsistent conduct and no mention of prejudice, this court will treat prejudice as a significant factor but not a dispositive one.

Waiver of the right to insist on arbitration may occur in several ways. Conduct

such as filing responsive pleadings while not asserting a right to arbitration, filing a counterclaim, filing pretrial motions, engaging in extensive discovery, use of discovery methods unavailable in arbitration, and litigation of issues on the merit have all been considered by courts to amount to a waiver of the right to arbitration. See, e. g., National Found. for Cancer Research, 821 F.2d 778 (C.A.D.C. 1987) (finding that the movant's delay in seeking arbitration, its extensive participation in discovery, its motion for summary judgment, and the resulting prejudice to the opposing party constituted waiver); United States v. Darwin Constr. Co., 750 F.Supp. 536, 538-539 (D.D.C. 1990) (finding plaintiff's conduct in filing eight motions with the court, conducting extensive discovery, and filing motion to stay two months before trial date inconsistent with intent to enforce arbitration right). There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case.

Among factors examined by the courts in determining whether there has been a waiver of the right to arbitrate are: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) the degree of pretrial litigation; (3) the length of delay in invoking an arbitration right and seeking a stay; (4) the proximity to the trial date; (5) whether a defendant seeking arbitration filed a counterclaim without asking for a stay; and (5) the resulting prejudice to the opposing party. See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995). No one factor is dispositive. Instead, Courts view the "totality of the circumstances " to ascertain whether the party seeking to compel arbitration has acted inconsistently with the arbitration right. See National Found. for Cancer Research, 821 F.2d at 774.

The totality of EraMED's conduct supports a finding that the Defendant has not waived its right to insist upon arbitration. Further, a submission of the dispute to arbitration now would not prejudice MetroHealth. EraMED has not delayed in seeking arbitration but has, instead, sought to compel arbitration from the inception of the dispute in this Court. In the absence any pretrial litigation, the Court finds no clear prejudice against MetroHealth in EraMED's motion to compel arbitration pursuant to the Agreement.

EraMED's statutory lien filings do not alter this Court's determination. These admitted statutory liens against three of MetroHealth's aircraft, filed by EraMED with the FAA pursuant to ORC 1311.71 *et seq*., do not represent action inconsistent with EraMED's right to arbitrate. Courts find a clear distinction between the mere filing of a statutory lien and the filing of a suit to enforce the statutory lien. See North Central Construction, Inc., v. Siouxland Energy & Livestock Cooperative, 232 F.Supp. 2d 959, 965 (N.D. Iowa 2002) (finding waiver due to prejudice and inconsistent action where contractor sought arbitration two months after filing suit to enforce mechanics' lien). Here, there is no evidence before the Court that EraMED availed itself of the opportunity to litigate as a result of the filed liens. EraMED's lien filings do not, in this instance, invoke a judicial, as opposed to arbitrable, forum and, as such, are not a waiver of its right to compel arbitration. EraMED's conduct has not been inconsistent with its right to arbitrate.

Upon review, the Court finds there exists a valid and enforceable Agreement between the parties, and all of the claims asserted by MetroHealth in its Complaint fall within the scope of the Agreement. The Court also finds that EraMED has not waived

its right to arbitrate by filing three statutory liens. Finally, because all of the claims are subject to arbitration, a dismissal, rather than a stay, is warranted. See Ozormoor v. T-Mobile USA, Inc., 354 Fed. Appx. 972, 975 (6th Cir. 2009) (district courts are not required to stay suits pending arbitration); Hensel v. Cargill, Inc. 198 F.3d 245, 1999 WL 993775, *4 (6th Cir. 1999) (litigation in which all claims are referred to arbitration may be dismissed); Arnold v. Arnold Corp., 920 f.2d 1269, 1275 (6th Cir. 1990).

**CONCLUSION**

Accordingly, EraMED's motion to compel arbitration is granted. Further, EraMED's motion to dismiss the Complaint is granted. Finally, EraMED's motion to stay proceedings is denied as moot.

IT IS SO ORDERED.

/s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 12 August 2010